IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00213-MR-WCM

| | |
|---|---|
| MYRON WAYNE BODTKER,<br><br>    Plaintiff,<br><br> vs.<br><br>WAL-MART INCORPORATED,<br><br>    Defendant. | )<br>)<br>)<br>) **<u>MEMORANDUM OF</u>**<br>) **<u>DECISION AND ORDER</u>**<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 85].

## I.   PROCEDURAL BACKGROUND

The Plaintiff Myron Wayne Bodtker, proceeding *pro se*, brings this action pursuant to Title VII of the Civil Rights Act of 1964 against his employer, the Defendant Wal-Mart Incorporated, alleging that the Defendant discriminated against him by denying his requests for a religious exemption to two of the policies the Defendant enacted during the COVID-19 pandemic: the face mask policy ("masking policy") and the paying of bonuses to its

vaccinated employees ("vaccine bonus policy").[1]  [Id.].  The Court will refer to these policies collectively as the Defendant's "COVID-19 policies."

The Defendant now moves for summary judgment on the Plaintiff's claims.  [Doc. 85].  The Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the burden that he carries in responding to the Defendant's motion.  [See Doc. 88].  The Plaintiff filed a response in opposition [Doc. 89], and the Defendant filed a reply.  The Plaintiff subsequently filed what appears to be a supplemental response.  [Docs. 90, 91].  The Defendant moved to strike the Plaintiff's supplemental response [Doc. 92], but the Court denied this motion on the grounds that the Plaintiff had not likely received the Court's <u>Roseboro</u> Order prior to filing his initial response.  [Doc. 94].  The Court permitted the Defendant to file a supplemental reply.  [See Doc. 99].  The Defendant's motion has now been fully briefed.  Therefore, it is ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers, admissions, stipulations, affidavits, and other materials on the

---

[1] The Plaintiff also asserted claims pursuant to the Ninth and Thirteenth Amendments to the United States Constitution, N.C. Gen. Stat. § 130A-157, and the North Carolina Constitution.  [See Doc. 1].  These claims have been dismissed.  [Docs. 35, 63].

2

record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)&(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).

"Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020) (quoting News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)). The Court does not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden shifts to the nonmoving party to demonstrate that a triable issue

3

exists.  Id.  When considering a motion for summary judgment, the pleadings and materials presented must be viewed in the light most favorable to the non-movant, and all reasonable inferences must be drawn in the non-movant's favor.  Adams v. UNC Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## III.    FACTUAL BACKGROUND

The following is a forecast of evidence taken in the light most favorable to Plaintiff as the nonmoving party.

The Plaintiff adheres to his "own" religion.  [Doc. 86-2: Plaintiff Dep. at 73:2-8].  He "hold[s] some of the beliefs of Christianity[,] but not all of them[.]"  [Id. at 73:21-74:7].  The Plaintiff similarly believes some, but not all, of the teachings of Seventh Day Adventism.  [Id. at 74:21-75:15].

The Defendant first hired the Plaintiff in May 2010 to work as a temporary produce sales associate at Walmart Store 1242 in Hendersonville, North Carolina.  [Id. at 22:17-23:7, 142:2-4].  The Plaintiff has worked at Store 1242 continuously since then, except for a brief period in 2022.[2]  [See Doc.

---

[2] The Defendant terminated the Plaintiff's employment on October 20, 2022, because it had not received the medical forms required to substantiate the disability leave he had taken.  [See Doc. 51-2 at 2].  However, the Defendant rehired the Plaintiff on November 21, 2022, after he submitted the required paperwork.  [Id.].  This period of unemployment is not at issue here.

4

51-2 at 2]. The Plaintiff has received multiple raises while working at Store 1242 and has been promoted to a full-time floor associate. [See Docs. 86-2 at 28-31; 86-4 at 47].

On March 10, 2020, North Carolina Governor Roy Cooper issued Executive Order ("EO") No. 116 declaring a "state of emergency" in North Carolina due to the emerging COVID-19 pandemic. [See Doc. 86-3 at 72-77].

On April 17, 2020, the Defendant notified all of its associates nationwide that they would be required to wear face masks while at work, subject to exceptions based on local laws, beginning on April 20, 2020. [See id. at 70]. The Defendant specifically noted that it was mandating masking based upon guidance from "state and local public health officials, the Centers for Disease Control ("CDC"), as well as [its] own Chief Medical Officer[,]" because "health guidance ha[d] shifted[,]" with the hope that this action would "curb the spread of [COVID-19]." [Id.].

On May 20, 2020, Governor Cooper issued EO No. 141, which provided, in pertinent part, as follows:

> Workers in Personal Care, Grooming, and Tattoo Businesses shall wear Face Coverings when they are within six (6) feet of another person. Notwithstanding this general requirement, people whose religious beliefs prevent them from wearing a

Face Covering, people who cannot wear a Face Covering due to a medical or behavioral condition, and people who are under twelve (12) years of age are excepted from the requirement to wear a Face Covering. Children under two (2) years of age shall not wear a Face Covering so that their breathing may not be inhibited.

[Doc. 86-4 at 18]. EO No. 141 also exempted "[w]orship, religious, and spiritual gatherings, funeral ceremonies, wedding ceremonies, and other activities constituting the exercise of First Amendment rights" from the masking requirement. [Id. at 15-16].

As COVID-19 spread, the Governor determined that he "[n]eed[ed] to extend [EO] No. 141[.]" [Doc. 86-3 at 78]. Accordingly, on June 24, 2020, he issued EO No. 147, which broadened EO No. 141's masking requirements to other employers. [Id. at 78-86]. As relevant here, EO No. 147 provided that "Retail Businesses must have all workers wear Face Coverings when they are or may be within six (6) feet of another person."[3] [Id. at 82]. EO No. 147 provided a limited exception for

a worker, customer, or patron who:

1.    Should not wear a Face Covering due to any medical or behavioral condition or disability (including, but not limited to, any person who has trouble breathing, or is unconscious or

_____

[3] The Plaintiff does not dispute that the Defendant is a "Retail Business" as that term is used by EO No. 147.

6

incapacitated, or is otherwise unable to put on or remove the face covering without assistance);

2.     Is under eleven (11) years of age;

3.     Is actively eating or drinking;

4.     Is strenuously exercising;

5.     Is seeking to communicate with someone who is hearing-impaired in a way that requires the mouth to be visible;

6.     Is giving a speech for a broadcast or to an audience;

7.     Is working at home or is in a personal vehicle;

8.     Is temporarily removing his or her Face Covering to secure government or medical services or for identification purposes;

9.     Would be at risk from wearing a Face Covering at work, as determined by local, state, or federal regulations or workplace safety guidelines;

10.    Has found that his or her Face Covering is impeding visibility to operate equipment or a vehicle; or

11.    Is a child whose parent, guardian, or responsible person has been unable to place the Face Covering safely on the child's face.

[Id. at 84].  EO No. 147 did not provide that the employees of "Retail Businesses" could be exempted from wearing a mask for religious reasons

7

as EO No. 141 had provided that the employees of "Personal Care" businesses could. [Compare id., and Doc. 86-4 at 18]. It also eliminated EO No. 141's exemption for religious gatherings and First Amendment activities. [See generally Doc. 86-3 at 78-86].

On June 26, 2020, the Plaintiff emailed Walmart Global Ethics ("Global Ethics") stating that he considered EO No. 147's mask "mandate a violation of [his] religious liberty."[4] [Doc. 86-4 at 25]. The Plaintiff further stated in his email that he would be submitting a "religious exemption form to [his] supervisors at . . . [S]tore 1242" and that he expected the Defendant "to honor [his] first amendment religious freedom by not requiring [him] to wear [a] face covering while" at work. [Id.]. Two days later, the Plaintiff submitted a handwritten document to his store manager, Joe Swingle, Jr. ("Swingle"), which stated as follows:

> N.C. Constitution Article I Section 13
>
> No human authority shall, in any case whatever, control or interfere with the rights of conscience.
>
> U.S. Constitution: Amendment 1
>
> no law shall prohibit the free exercise of religion or abridge the right of the people to assemble.

---

[4] Global Ethics is the Defendant's internal department that investigates when associates "raise concerns" about ethical issues, such as discrimination. [See Doc. 86-3 at 15-21].

> title VII of the Civil Rights Act of 1964 requires employers to provide reasonable accommodation to the sincere religious beliefs of employees.

[Doc. 86-5 at 4] (errors uncorrected). In response, Swingle informed the Plaintiff that he could take a job-protected leave of absence if he did not wish to comply with the Defendant's masking policy. [Doc. 86-2 at 155:8-15].

After receiving the Plaintiff's email, Global Ethics referred the Plaintiff's internal complaint to Virginia Marhanka ("Marhanka"), a human resource manager, instructing her to follow-up with the Plaintiff and to address his concerns. [Doc. 86-4 at 26-27]. Global Ethics also contacted the Plaintiff on July 9, 2020, recommending that he contact Marhanka to discuss his complaints. [Id. at 28]. The Plaintiff attempted to call Marhanka that day, but he did not reach her. [Id.]. At an unspecified time thereafter, the Plaintiff met with Swingle and Teresa Galloway ("Galloway"), an assistant manager, to discuss his concerns. [Docs. 86-2 at 77:10-78:19; 91-2 at 1]. During this meeting, the Plaintiff told Galloway that he "thought . . . these policies were a mark of the beast."[5] [Doc. 86-2 at 77:10-78:19]. The Plaintiff made these

---

[5] The Plaintiff explained during his deposition that the Defendant's masking policy was inconsistent with his beliefs based upon Revelation 13:16-17, [Doc. 86-2 at 74:2-12], which states: "It also forced all people, great and small, rich and poor, free and slave, to receive a mark on their right hands or on their foreheads, so that they could not buy or

9

remarks only to Galloway; however, the Plaintiff that noted, Swingle was sitting nearby and possibly overheard. [Id. at 80:5-10; see also Doc. 91-2 at 1]. The Plaintiff cannot identify any other employees of Defendant with whom he discussed his religious beliefs and concedes that he never identified his specific religious beliefs to the Defendant in writing. [Doc. 86-2 at 77:5-78:19, 80:11-19].

Between July 8 and July 13, 2020, the Plaintiff sent Global Ethics multiple emails generally claiming that the Defendant's mask mandate violated his rights, complaining that it was taking the Defendant too long to address his concerns, and threatening to quit wearing a mask while at work. [Docs. 86-4 at 28; 86-5 at 8-12].

On July 13, 2020, the Defendant responded to the Plaintiff and informed him that his request for a religious exemption to its masking policy was denied because EO No. 147 did not allow it to grant such exemptions. [Doc. 86-4 at 29].[6] The Plaintiff concedes that the Defendant denied his request solely based upon its interpretation of EO No. 147. [Doc. 86-2 at

_____

sell unless they had the mark, which is the name of the beast or the number of its name." Revelation 13:16-17 (New International Version).

[6] The Plaintiff's summarization of the Defendant's response is cited because neither party has submitted the Defendant's response as part of their forecast of evidence. Additionally, the record does not indicate how the Defendant communicated its response to the Plaintiff.

152:7-22].  The Plaintiff emailed Global Ethics the next day stating that he viewed the Defendant's response as "insane," "disingenuous[,] and insulting to [his] intelligence."  [Doc. 86-4 at 29].  While acknowledging that EO No. 147 did not provide for religious exemptions on its face, he nonetheless argued that he should be exempt from the Executive Order's masking requirement because of his religious beliefs.  [Id.].  The Plaintiff sent Global Ethics further emails on July 15, July 17, July 22, July 23, and August 3, 2020, generally arguing that the Defendant needed to provide him with a religious exemption, demanding a written response, and threatening not to wear a mask while at work.  [Doc. 86-5 at 14-20].

On August 6, 2020, the Plaintiff worked his shift at Store 1242 without wearing a mask.  [Id. at 22].  The Plaintiff was not confronted by management.  [Id.].  However, when Plaintiff attempted to work his shift on August 7, 2020, without wearing a mask, he was confronted by three different assistant managers before Swingle ultimately informed him that he would either have to "put[ ] on a face covering immediately[,] or clock out and go home."  [Id.].  The Plaintiff "clocked out."  [Id.].  On August 10, 2020, the Plaintiff emailed Global Ethics recounting these events.  [Id.; see also Doc. 86-4 at 31].  He also informed the Defendant that he would be filing suit against it for religious discrimination.  [Id.].

11

The Plaintiff sent Global Ethics further emails on August 11, August 17, and August 24, 2020, asserting that the Defendant was violating his rights, preemptively informing the Defendant that he did not view being allowed to wear a face shield as an adequate accommodation, quoting the Civil Rights Act of 1964, threatening to file a charge with the Equal Employment Opportunity Commission ("EEOC"), and demanding a written response. [Doc. 86-5 at 23-26]. On October 6, 2020, the Plaintiff emailed Global Ethics stating that he would be meeting with the EEOC regarding filing a charge against the Defendant on November 24, 2020, and that he would "henceforth exercise [his] religious expression by wearing a mask with [his] religious protest against the forced government Covid mandates printed on it while on the clock."[7] [Doc. 86-7 at 9]. Thereafter, the Plaintiff wore a mask reading "None Shall buy or Sell Without the Mark of the Beast."[8] [Doc. 89 at 7].

---

[7] The record does not plainly state whether the Plaintiff worked any shifts at Store 1242 during the period between August 7, when he clocked out after refusing to wear a mask, and October 6, 2020, when he indicated he would work while wearing a mask displaying this message. However, the Plaintiff testified at his deposition that he did not suffer any loss of wages because of the Defendant's policy. [Doc. 86-2 at 217:4-7]. This forecast is the only evidence indicating that he continued working during this period.

[8] There is no indication in the record that the Defendant attempted to prevent the Plaintiff from wearing this mask.

On May 14, 2021, the Governor promulgated EO No. 215, thereby eliminating the masking requirement for "Retail Businesses" and restoring EO No. 141's exemption for religious and First Amendment activities because conditions were improving.  [Doc. 86-4 at 5].  That same day, the Defendant modified its COVID-19 policy.  [Id. at 32].  As relevant here, the Defendant's modified policy provided $75.00 bonuses[9] to associates based in the United States who became fully vaccinated against COVID-19, and, beginning on May 18, 2021, allowed these employees to stop masking.[10] [Id.].  In its email notifying its associates of the modified policy, the Defendant explained, "[w]e're encouraging all associates to get vaccinated and help end this pandemic.  Do it for your health, your family, your friends, your community and your country—let's help reach our national vaccination goals by the Fourth of July.  Today, we're excited to share two more reasons why: **no masks and a cash bonus.**"  [Id.] (emphasis in original).

The policy did not require associates to disclose their vaccination status to the Defendant; however, associates who indicated that they were

---

[9] The Defendant later increased the bonus to $150.00.  [Doc. 86-4 at 35].

[10] The Plaintiff concedes that this change was in accord with May 2021 updates to the CDC's guidelines, which provided that fully vaccinated individuals no longer needed to wear masks.  [Doc. 86-2 at 170:14-171:2].

unvaccinated or who chose not to answer did not receive the bonus, and were required to continue masking. [Id.; see also Doc. 86-2 at 65:11-22]. The Plaintiff was asked about his vaccination status on only one occasion, and, in accord with the policy, indicated that he did not wish to answer. [Doc. 86-2 at 182:25-183:3]. Accordingly, he did not receive a bonus for being vaccinated. [Id. at 181:21-182:3]. On May 17, 2021, the Plaintiff emailed Global Ethics arguing that the Defendant was committing religious discrimination against him by way of their modified policy, as it only allowed for vaccinated employees to receive bonusses and to cease masking. [Doc. 86-4 at 33]. Specifically, the Plaintiff stated, that he is "claim[ing] a RELIGIOUS exemption to Covid vaccination" and that "if [the Defendant] forces me to continue wearing [a] face covering and will not give me the same $75 bonus they are giving other employees, that constitutes religious discrimination against me." [Id.].

## IV.   DISCUSSION

Under Title VII, employers are prohibited from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." See 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer

14

demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j). "Thus, an employer has a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir 2008) (quoting in part Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75 (1977)).

"Courts have recognized that employees may utilize two theories in asserting religious discrimination claims." Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996) (citing Mann v. Frank, 7 F.3d 1365, 1368-70 (8th Cir. 1993)). "These theories are denominated as the 'disparate treatment' and 'failure to accommodate' theories." Chalmers, 101 F.3d at 1017 (citing Mann, 7 F.3d at 1368-70). While the Plaintiff's claims challenging the Defendant's COVID-19 policies appear to be primarily focused on the Defendant's alleged failure to accommodate his religious beliefs, the Plaintiff has not specified whether he intends to proceed under a failure to accommodate theory or a disparate treatment theory. Accordingly, out of an abundance of caution, the Court will analyze the Plaintiff's claims under both theories.

15

## A.    Failure to Accommodate

In religious accommodation cases, the Fourth Circuit employs a burden shifting scheme similar to the one articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Thus, to prove a claim under the failure to accommodate theory, a plaintiff must make a prima facie showing that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" Firestone Fibers, 515 F.3d at 312 (quoting Chalmers, 101 F.3d at 1019).  "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship."  Firestone Fibers, 515 F.3d at 312 (quoting Chalmers, 101 F.3d at 1019) (alteration in original).

To establish a "bona fide religious belief," the Plaintiff must show that his purported beliefs are both (1) "sincerely held" and (2) "religious in nature." See Welsh v. United States, 398 U.S. 333, 339 (1970); Ellison v. Inova Health Care Servs., -- F.Supp.3d --, 2023 WL 6038016, at *4  (E.D. Va. Sept. 14, 2023).  At issue here is the second requirement, namely, whether the Plaintiff's beliefs are religious in nature.

16

"Whether one's beliefs and practices are religiously motivated is of course a difficult question for courts of law to decide." Ellison, 2023 WL 6038016, at *4 (citing Doswell v. Smith, 139 F.3d 888 (4th Cir. 1988)). In determining whether a particular belief is religious, the Court may not "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Hernandez v. Comm'r, 490 U.S. 680, 699 (1989); Ellison, 2023 WL 6038016, at *4 ("the determination of whether a plaintiff's beliefs are religious must not turn upon a judicial perception of the belief or practice in question"). Nevertheless, the Court may consider whether the particular belief appears to be "based on a system that is recognizably a religious 'scheme of things,' rather than secular morality or personal health, convenience, preference, or whim." Shigley v. Tydings & Rosenberg LLP, -- F.Supp.3d --, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024) (quoting Welsh, 398 U.S. at 339). "[B]eliefs based on personal preference cannot establish a sincere religious objection under Title VII because they would amount to a 'blanket privilege' with no principled limitation in scope." Finn v. Humane Soc. of U.S., No. GLR-23-2107, 2024 WL 1765702, at *5 (D. Md. Apr. 24, 2024). "Ultimately, beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in

17

communicating the beliefs."  Foshee v. AstraZeneca Pharms. LP, No. SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023).  With regard to employers' COVID-19 measures, this issue revolves around the distinction between a religious belief and a philosophical or even political view.

Here, the Plaintiff has failed to present a forecast of evidence from which a reasonable jury could conclude that his objections to the Defendant's COVID-19 policies were grounded in a belief that is religious in nature.  First and foremost, the Plaintiff has not identified a particular religion to which he subscribes.  Rather, he states that he adheres to his "own" religion.  [Doc. 86-2: Plaintiff Dep. at 73:2-8].  While he purports to "hold some of the beliefs of Christianity," he does not hold all of them.  [Id. at 73:21-74:7].  Similarly, the Plaintiff adheres to some, but not all, of the teachings of Seventh Day Adventism.  [Id. at 74:21-75:15].  Without being able to tie his beliefs to those held in common with others of a particular faith, the Plaintiff is left to prove the religious nature of his belief by other means.

However, the Plaintiff has failed to present any evidence that connects his objections to the Defendant's COVID-19 policies to his purported religious beliefs.  In his forecast of evidence, the only religious tenet the Plaintiff identifies as prohibiting him from masking is his reference to the Biblical passage found at Revelation 13:16-17.  That provision, however,

18

prohibits an adherent from receiving the "mark of the beast," which is either a name or a number that is placed on one's right hand or forehead. A mask, however, is neither a name nor a number, and the Plaintiff was not directed to place it either on his hand or his forehead. The Plaintiff offers no explanation as to how the act of covering one's mouth and nose with a mask violates this religious tenet.

Similarly, with respect to his claim based on the vaccine bonus policy, the Plaintiff has not presented any forecast of evidence regarding his religious beliefs related to the COVID-19 vaccine. While there are some religions that harbor objections to vaccinations and some other medical procedures, the Plaintiff has presented no evidence of any affiliation with those religions or any adherence to their tenets. As such, there is no evidence before the Court from a which a jury could reasonably conclude that the Plaintiff's objections to the Defendant's COVID-19 policies was based on a religious system of beliefs as opposed to the Plaintiff's mere personal preference. There is no doubt that COVID-19 measures have been a point of contention since the onset of the pandemic, and even remain so today when such measures have essentially all been lifted. However, these objections are primarily political in nature, challenging a perceived governmental overreach. Others are fact-based, calling into question the

scientific foundations for the measures.  The Plaintiff has presented nothing to differentiate his objections from these objections.[11]

Having failed to establish that his objections to the Defendant's COVID-19 policies were based upon a bona fide religious belief, the Plaintiff's failure to accommodate claims must be dismissed.

Even if the Plaintiff were to have presented a forecast of evidence of a bona fide religious belief, the Plaintiff has failed to present a forecast of evidence from which a jury could conclude that he informed his employer of this belief.    The Plaintiff repeatedly emailed Walmart Global Ethics complaining generally of a violation of his religious liberty and that he would be seeking a religious exemption from his supervisors regarding the mask requirement.  These emails, however, do not identify the specific nature of the Plaintiff's religious objections.  Moreover, while the Plaintiff submitted a handwritten document to Swingle, citing general legal principles regarding the free exercise of religion, the Plaintiff never explained his specific religious beliefs or the underlying basis of his religious objections to his manager. While the Plaintiff has presented a forecast of evidence that in a subsequent

---

[11] Notably, at the outset of this dispute, Plaintiff's objection was to the Governor's Executive Order, rather than any religious discrimination by the Defendant. [Doc 86-4 at 25].

meeting with Swingle and Assistant Manager Galloway, the Plaintiff told Galloway that he "thought . . . these policies were a mark of the beast,"  he offered no further detail on the religious nature of his objection.  Further, the Plaintiff admittedly made these remarks only to Galloway, an assistant manager.  While the Plaintiff speculates that the store manager, Swingle, may have overheard his comments because he was sitting nearby, such speculation is not sufficient to establish that the Plaintiff informed his employer of the specific nature of his religious objections to the masking policy.

Similarly, with respect to his objection to the vaccine bonus policy, the Plaintiff has not presented any forecast of evidence that he informed his employer regarding the nature of religious objection to the vaccine bonus policy.  The forecast of evidence shows only that the Plaintiff claimed a "religious exemption" to the vaccine and that he believed it was discriminatory for Defendant to allow only vaccinated employees to receive bonuses and to quit masking under the policy.  [See Doc. 86-4 at 33].  He said nothing as to how or why his religious views prohibited vaccination.

Further, the Plaintiff has failed to present a sufficient forecast of evidence to satisfy the third element of the prima facie case, that is, that he

suffered some type of adverse employment action.[12]  Specifically, the Plaintiff has not identified what harm he believes he suffered because of his objections to the Defendant's policies.[13]  The forecast of evidence before the Court establishes that the Plaintiff continues to work for the Defendant, that he holds the same position he held before the pandemic, and that he has received multiple raises since he first objected to the masking policy.  Further, there is no forecast of evidence before the Court that Plaintiff has been reprimanded, that he has received a less favorable schedule, or that the Defendant has altered his work conditions or the terms of his employment in any way in response to his objections to the masking policy.  Put simply, the

---

[12] Until recently, it was settled that "an adverse [employment] action . . . 'constitutes *a significant* change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (emphasis added)).  However, in Muldrow v. City of Saint Louis, the Supreme Court abrogated this line of cases.  601 U.S. __, 144 S. Ct. 967, 972 (2024).  Under the new test, an employee "need not show that [his] injury satisfies a significance test[,]" he "must show" only that he suffered "some harm . . . ."  Id.

[13] To the extent that the Plaintiff contends that the Defendant's enforcement of its masking policy was itself an adverse employment action, an employer's enforcement of a generally applicable policy is not an adverse employment action against an employee.  See Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001) (citing McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 484 (7th Cir. 1996)); see also Lawson v. Principi, No. 7:00CV00851, 2001 WL 987788 (W.D. Va. Aug. 21, 2001) ("The enforcement of a generally applicable . . . policy . . . does not constitute an adverse employment action.").  Here, the Defendant's masking policy applied to all of its associates based in the United States.  Accordingly, the Defendant's enforcement of this policy was not an adverse employment action against Plaintiff.

22

Plaintiff has not forecast any evidence that the conditions or terms of his employment have changed *at all*.[14]

While the Plaintiff complains that he was deprived of the vaccine bonus, the Defendant's failure to pay such a bonus to the Plaintiff is not in any way discriminatory. The bonus policy merely provided an incentive, on an *entirely voluntary* basis, for the Defendant's employees to get vaccinated. An employee suffers no adverse employment action when denied a benefit for which he has not met the requirements, and for which the employer was under no obligation to provide. See Hanson-Hodge v. Kijakazi, No. 22-2818-BAH, 2023 WL 8357322, at *12 (D. Md. Dec. 1, 2023) ("Being denied overtime itself is not a materially adverse employment action when overtime is not an entitlement."); Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996) (holding that an employer's denial of a purely discretionary benefit is not an adverse employment action).

---

[14] The Plaintiff argues that he lost two hours of wages when Swingle informed him that he would either have to "put[] on a face covering immediately[,] or clock out and go home[,]" when the Plaintiff attempted to work his shift on August 7, 2020, without wearing a mask. [Docs. 86-5 at 22; 91 at 9]. While it is doubtful that this loss is sufficient to meet even Muldrow's lower bar, the Plaintiff has forecast no admissible evidence that he actually lost these wages. To the contrary, during his deposition, the Plaintiff plainly testified that he "did not incur any loss of wages as a result of [the Defendant's] COVID mask policy." [Doc. 86-2 at 217:4-7].

23

Taking the Plaintiff's forecast of evidence as true, there is no indication that he ever told the Defendant that whether or not he had been vaccinated against COVID-19. To the contrary, when asked by one of the Defendant's managers if he was vaccinated, the Plaintiff simply declined to respond. Therefore, the Plaintiff plainly did not meet the requirements for receiving a bonus under the Defendant's policy. Moreover, the Defendant was under no obligation to provide bonuses to its employees for becoming vaccinated. Thus, the Defendant did not commit an adverse employment action against the Plaintiff by enacting and enforcing its vaccine bonus policy.

Even if the Plaintiff had presented a forecast of evidence sufficient to establish a *prima facie* case, the Defendant is still entitled to summary judgment if it can establish as a matter of law that providing the Plaintiff with an accommodation would have posed an undue hardship. See Firestone Fibers, 515 F.3d at 312. To demonstrate undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Groff v. DeJoy, 600 U.S. 447, 470 (2023) (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 83 n.14 (1977)).

With respect to the Defendant's masking policy, the Plaintiff never requested a traditional "accommodation" from the Defendant. Rather, he

24

demanded that the Defendant completely exempt him from its masking policy. Even assuming that the Plaintiff's demand for a wholesale exemption could be construed as a request for a religious accommodation, "[e]mployers are not obligated to provide employee's their preferred choice of accommodation . . . ." <u>Tarquinio v. Johns Hopkins Univ. Applied Physics Lab</u>, No. RDB-23-0727, 2024 WL 1604493, at *4 (D. Md. Apr. 11, 2024) (holding that employer was not obligated to provide a "blanket exemption from" its COVID-19 vaccination policy).

Moreover, where granting a "religious accommodation would violate [the] . . . law," "[c]ourts have found Title VII undue hardship . . . ." <u>Id.</u>; <u>see also</u> <u>Tandian v. State Univ. of N.Y.</u>, -- F.Supp.3d --, 2023 WL 8827577, at *8 (N.D.N.Y. Oct. 13, 2023) ("Title VII's protections for an employee cannot require employers to violate the law."). Here, the Defendant quite reasonably perceived that it was required to comply with EO No. 147, which did not allow for religious exemptions. Had the Defendant allowed the Plaintiff's request for an exemption and thus failed to comply with EO No. 147, it would have potentially subjected itself to serious penalties, such as citations and fines. <u>See</u> NC Governor Roy Cooper, <u>Frequently Asked Questions for Executive Order No. 147 June 24, 2020</u>, https://governor.nc.gov/documents/files/eo-

147-faq/open (last visited May 16, 2024).[15]  Thus, the Court concludes as a matter of law that the Defendant could not have accommodated the Plaintiff's request for an exemption to its masking policy.[16]

In sum, the Plaintiff has failed to make out a *prima facie* case based on the Defendant's masking policy under a failure to accommodate theory, and the Defendant has demonstrated it could not have accommodated the Plaintiff's beliefs without suffering undue hardship.  Therefore, insofar as the Plaintiff's Title VII claims based on Defendant's masking policy are premised on a failure to accommodate theory, such claims fail as a matter of law.

---

[15] Additionally, although the parties have forecast no evidence of it, on November 23, 2020, the Governor executed EO No. 180 and stiffened the penalties for noncompliance with his mask mandate.  Failure to comply with EO No. 180—which was in effect while Defendant was enforcing its masking policy and which applied to retail businesses, such as the Defendant—was a "Class 2 misdemeanor, which could result in **a fine up to $1,000 or active punishment**."  See NC Governor Roy Cooper, Frequently Asked Questions ("FAQ") for Executive Order No. 180 November 23, 2020, at 4, https://files.nc.gov/governor/documents/files/EO-180-FAQ.pdf (last accessed June 26, 2024) (emphasis added).

[16] Additionally, "where an employee contends that [ ]he has a religious need to impose personally and directly on fellow employees, invading their privacy . . . , the employer is placed between a rock and a hard place."  Chalmers, 101 F.3d at 1021.  It is undisputed that the Defendant enacted its masking policy with the objective of protecting its employees and customers.  Allowing the Plaintiff to evade the requirements of this policy and to impose upon his fellow employees and the Defendant's customers by refusing to wear a mask would have put others at an increased risk (whether real or perceived) of contracting COVID-19.  This would have been particularly unreasonable given that the burden to the Plaintiff of wearing a mask, if any, was at very most *de minimis*.  See McArthur v. Brabrand, 610 F. Supp. 3d 822, 835 (E.D. Va. 2022) ("wearing a mask . . . is a de minimis burden."); Sambrano v. United Airlines, Inc., -- F. Supp. 3d --, 2023 WL 8721437, at *3 (N.D. Tex. Dec. 18, 2023) ("the requirement to . . . wear an FDA-approved mask at work . . . do[es] not clear the *de minimis* threshold.").

26

Similarly, the Plaintiff never requested that Defendant provide him an "accommodation" to its vaccine bonus policy. Rather, he simply demanded that Defendant pay him a bonus even though he did not meet the policy's requirements for receiving one. The Defendant enacted its bonus policy to encourage its employees to receive the COVID-19 vaccine. Whatever success the Defendant might have had in persuading its associates by way of this policy would have been plainly undermined if the Defendant had provided bonuses to associates who did not become vaccinated. Accordingly, it would have posed an undue hardship to the Defendant to pay the Plaintiff a bonus despite his failure to meet the requirements for receiving one under its policy.[17] Therefore, to the extent that the Plaintiff's claims challenging the Defendant's bonus policy are premised on a failure to accommodate theory, such claims, too, fail as a matter of law.

### B. Disparate Treatment

"To prove a claim under the disparate treatment theory, an employee must demonstrate that the employer treated [him] differently than other employees because of [his] religious *beliefs*." Chalmers, 101 F.3d at 1017.

---

[17] Additionally, aside from simply paying the Plaintiff the bonus for which he did not qualify, it does not appear that the Defendant could have offered the Plaintiff any other accommodation to the bonus policy.

27

To establish a prima facie case of disparate treatment, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment discrimination; and (4) different treatment from similarly situated employees outside the protected class."   Finn v. Humane Soc. of U.S., No. GLR-23-2107, 2024 WL 1765702, at *5 (D. Md. Apr. 24, 2024).

Critically, the Plaintiff has failed to present a forecast of evidence that he was a member of a protected class to satisfy the first, third, and fourth elements of the prima facie case.[18]  For the reasons stated supra, the Plaintiff has failed to present a sufficient forecast that he is a member of a protected class in that he has failed to show that his objections to the Defendant's COVID-19 policies were sincerely religious in nature.  Moreover, the Plaintiff has failed to present a forecast of evidence that he suffered any harm or that employees of a different religion, or no religion at all, received more favorable treatment under the Defendant's COVID-19 policies.  Therefore, to the extent that Plaintiff's Title VII claims rest on a disparate treatment theory, such claims fail as a matter of law.

_____

[18] There does not appear to be any dispute that the Plaintiff was performing his job satisfactorily, as evidenced by the fact that he received a promotion from a temporary produce sales associate to a full-time floor associate, and that the Defendant had given him at least three raises since 2020.

28

## V.    CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is granted, and the Plaintiff's claims are dismissed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 85] is hereby **GRANTED**, and the Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

The Clerk of Court is respectfully directed to enter a Judgment consistent with this Order contemporaneously herewith.

**IT IS SO ORDERED.**

Signed: June 27, 2024

Martin Reidinger
Chief United States District Judge

29